Good afternoon, everyone. Okay. Our next case is Javier Artache against Superintendent Forest SCI 22 Dance 1500. Mr. Nguye. First, I would like to request permission to reserve three minutes of rebuttal time. May I proceed? Yes, sir. Good afternoon, members of the court councils. We are here today for oral argument in the Artache matter. In this case, the appellate brief allege that trial counsel and PCRA counsel have been ineffective for failing to raise an issue involving the trial court's consideration and use of the defendant's post arrest silence. Um, trial counsel, when the court discussed that matter, did not object and PCRA counsel did not raise that issue in the state PCRA proceedings. In the brief, I argue that the reference to the silence and the consideration of the silence was both in violations of the federal constitution and the Pennsylvania state constitution. In the brief, I raised for the first time the Pennsylvania constitutional basis. I will admit that I did not know before that it was actually in violation of the Pennsylvania constitution. Um, the federal law, uh, in this circuit, it's not clear what strike that has not addressed the issue of whether post arrest silence premier on the warnings can be used against a defendant for impeachment or any other purpose. In this case, it was not used for impeachment. It was used as substantive evidence of guilt, which I will explain later why. Okay. In Pennsylvania, the law is clear and the law forbids anyone for racing or the court from considering any post arrest silence period, whether before or after Miranda. Uh, so I submit to you that under the Pennsylvania constitution, it is, in my opinion, a clear violation. I'm sorry. Under spots, the spots case. Yes. What do we do with the fact that the trial judge said at the same time she said, you know, she had this pointed comment that the prosecutor's unintended, indirect, oblique, and not meant at all comment on Mr. Uh, explaining her decision, she does mention his, his failure to speak up as a witness. She said, well, you know, you said you were a witness. Witnesses come and tell their story. So what do we do with that sort of speaking out of the same, you know, sides of her mouth? The way I see that, your honor, is that that was not an inadvertent comment, um, in which the court by mistake made reference to his silence. Uh, that was an intentional comment. Um, and it was an intentional comment that if the court focuses on that statement and a few lines before that statement, she says she puts the issue on the evidence on the fork in the road. So it's either a night witness or the shooter. Right. So my question really goes to the, the, the posture of this case, which is it's an ineffective assistance of counsel case, right? Right. When the, when counsel has heard the judge say, I heard that reference that was improper, I'm not going to consider it. And then a few minutes later, she says, you know, she does mention the silence. Why is it inappropriate for counsel to think to himself or herself? You know, I heard I've heard this whole in context, and I know what the judge is thinking about that. I'm just not going to say anything. I understand that that that is plausible. Um, and, um, I guess we're going to talk about my memorandum in support of the when I first came look at this issue. I thought about that. I also thought about where it happened, where the mistake took place. I don't know a better word than mistake. It did not happen in the middle of the trial. It did not happen during a charge conference. It didn't happen during an argument. It happens when a judge is making, announcing her verdict. The case is over. Objecting may have been a waste of time. He did object when it first came up when the prosecutor brought it up. Right. But that was during closing, not when the court was announcing her burden. There is a distinction between your honor. You as a judge telling me I heard the case and this is my decision and me objecting because the prosecutor is making an inappropriate argument. It's a different stage. Now, the reality is I was incorrect because regardless of that tendency that the court raised, because the judge just said that, the judge is not going to consider it. The only way that this could have been preserved for appeal was by objecting. It may be I argue structural error. And that was an argument I will submit candidly, somewhat of desperation, trying to find a way to address this issue. But I consider what happened in the case, because of the dual role of the judge, that it was an extremely serious violation of the constitutional law, in her capacity as the trier of fact and the arbiter of the law. And so my initial thought was this is such a clear error that it should have been raised on direct appeal. Can I just work backwards? Let's assume that Pennsylvania law should have been brought up in terms of the claim here. It wasn't. Let's assume for the moment that was deficient counseling. Where's the prejudice? I mean, you've got... I could address the prejudice. I'm prepared for that. Go ahead. So for me to address the prejudice, I have to discuss the evidence in the case. Because that is the heart of the case. And I'll note some of that evidence to you, maybe just to start it. The judge highlighted the state's witness, Cerveni, in finding Artax guilty. She saw no one else in the area, heard no car speeding away, saw no person pursuing Artax. The judge discounted Rosenberg's testimony that she heard her car speed off. Cerveni also testified that Artax biked back toward the scene moments after the shooting, which the judge found was highly inconsistent with his witness theory, that he was just a witness. The medical examiner's report confirmed that the shooter was right behind the victim. And that was consistent with Cerveni's testimony that she saw Artax as he turned the corner right behind the victim. And also found that the two-year flight to Puerto Rico was inconsistent with his witness theory. He wasn't a witness to something. He was trying to avoid being arrested for this murder. And you put all of that together. How does he possibly win? Okay. I'm going to have to also repeat the facts. Go ahead. It's not an interpretation. It's just facts on the record. First of all, this happened around 6 a.m. in the morning. And they were somewhere in the middle of Mount Vernon Street. And they both walk toward 17th Street. The transcript supports both theories, that they were together walking at the same time. And on another portion of the transcript, it states that Mr. Artaxia was behind him. Now, in terms of the credibility of Ms. Cerveni, okay, the judge goes through it, makes a very strong conclusion that Ms. Cerveni was credible. And I have no reason to question her. She testified to what she recalled. Okay. But when she's talking about all the witnesses corroborated her and everything was perfect, that is not true. When you look at the decision, okay, when she talks of the corroboration, she uses Ms. Ramos and Ms. Rosenberg as corroborating witnesses of Ms. Cerveni. And the only thing she corroborates is that both of them heard a woman crying and screaming. That is it. And Ms. Cerveni testified that she was indeed crying and screaming. And, of course, it's reasonable if she was crying and screaming after she saw her friend on the floor dead. In terms of rejecting the speeding car theory, there are some facts here. Now, the judge doesn't question or challenge Ms. Cerveni's ability to perceive or hear. Yet, Ms. Cerveni has spent the entire night up, has been using cocaine, and her friend had just been killed, so she was under stress. That did not affect her perception. But Ms. Rosenberg's being awakened by a shot that she overheard affected her perception. So she did not accept Ms. Rosenberg's testimony that she hurt a car. She also mentions that Ms. Cerveni had no ax to grind. True, I'm certain she didn't, but nor did Ms. Rosenberg. There was no evidence that Ms. Rosenberg came to testify to give the defendant an alibi. What about the two years of hiding out in Puerto Rico? There is no question that that is evidence of flight. But let's talk about some of the things. As I read the court's explanation for her decision, it's basically this. Artash says to the other guy, to the victim, let's take a walk. She says to Serveni, you stay here. They go away, either together or one in front of the other a little bit. And then there's a gunshot. And then he comes running back, and the victim's dead. And then, you know, within a day, he's off to Puerto Rico for two years. That seems to be the gist of the, as I read it, of the judge's decision. I agree in terms of that was one of the factors. She also gave a lot of credit to Ms. Serveni. And so? And I think, you know, no question. And so if you build into that her reference to the silence, which is the problem here, I guess the question is, was there prejudice? Would the outcome have been different? Okay, let me highlight some parts. What the judge already said about her decision. Okay. So first, when they walk away, and so full disclosure, I understand that the facts indicate that there was a disagreement in Spanish between the deceased and. Because of the money, yeah. Okay. But they come back down. Mr. Artash comes back down. And this is the testimony at that point. Ms. Serveni testified that when they walk away, they appear to be fine. And they were friendly and calm. And they walk away to buy drugs. Okay. Ms. Serveni testified that she did not hear the appellant threaten the deceased. Ms. Serveni testified that she never saw the appellant with a firearm before, during, or after. Ms. Serveni testified that she did not see any bulge on the appellant's clothing that indicated he was armed. Ms. Serveni testified that she did not see a firearm next to the body. In fact, no firearm was recovered. Okay. Ms. Serveni also testified that when he came back and yelled, they are after me, she considered him, and this is an explicit question, that he appeared to be upset and frightened. Then there is the testimony of Ms. Ramos who testified that she knew that Keebler was having problems with the deceased because of some reporting of the deceased may have been robbing people in the neighborhood. There were other things, but those things were not admitted into evidence. So technically, the judge didn't consider them. So I'm not going to mention them in the hearing, even though they're in the brief. Okay. So when you put those questions, all of those facts together, and there is really no eyewitness to the shooting, then the evidence is not as strong as it may be. It's not really a weight of the evidence issue. It's a prejudice issue, strict on prejudice. Right. Right. So the test will be that you look at the, correct me if I'm wrong, you look at the full evidence, and you try to determine whether based on the weight of that evidence, okay, the strength of that evidence, there could have been, when you consider it together, could it have been a different result without the comment? Correct. And I think it could have. That is my position. Okay. Thank you. We'll hear back from you on rebuttal. Thanks. And I apologize if I went way back. That's okay. That's all right. Ms. Ernst? Good afternoon. May it please the Court, my name is Catherine Ernst on behalf of the Commonwealth, and I know this is an awkward situation, but could I preserve one minute for rebuttal? Yes. Thank you. I'd like to address each of your questions first, if I may. So as to Judge Porter's question regarding what do we make of the fact that the judge initially had sustained the objection regarding the prosecutor's use of the silence, but then not that many pages later in the transcripts, basically made the same determination or considered the same evidence that she said that she… And there was a middle step in between. She sustained the objection. She said, I heard that. I'm not buying it. I'm not listening to that. I know it was improper. And then she mentioned the silence. Right. So what I would say to that is, so, and the question was, could trial counsel have reasonably then thought there's no point in objecting? What I would say is that the fact that she sustained the earlier objection, if anything, should have made trial counsel think that she would be likely to sustain the objection again, and that maybe she had a slip of the mind where she forgot she wasn't supposed to be considering that, and had he brought that to her attention, then a reasonable jurist would have reweighed the evidence, reconsidered the evidence, taking that impermissible consideration away, and it's our position that there's a reasonable likelihood of a different outcome. The other reason that it wouldn't be reasonable for counsel to not object at that time is that there would be absolutely no harm in objecting. She had just found him guilty. And so why would you forego an objection that reasonably could help your client when there's absolutely no harm in doing so at all? Was it your view that the prosecutor's argument about silence and how Mr. Atashi's father would have encouraged him to come forward and whatnot was about pre-arrest silence or post-arrest silence? It reasonably, the comment that the judge made, was that about pre-arrest? The prosecutor's argument. The prosecutor actually seemed to be making the exact same argument that the judge later said. He said, the prosecutor said that either he did it or someone else did it, and maybe he even was conspiring with this other potential person. We don't know. What we do know is that his father was a police officer, and surely his police officer father would have told him to go to the police. And so since he didn't speak to the police, this means, and then he was cut off by the objection. And so it sounds like he was making essentially the same exact argument that the judge later referenced in her own remarks. And, in fact, when she started talking about either he was a witness or he was the perpetrator, she again actually referenced the prosecutor's remarks and said that he was walking a fine line with those remarks, but that he had a point and then went on with her discussion and then ultimately got to the point where she expressly stated that she was considering his silence. Wasn't her, in the last part, the part that's maybe problematic, wasn't her point that you say you're a witness, witnesses tell their story? And so she was, it was, he didn't testify, so it wasn't impeachment, but in a sense it was impeaching the position that he had taken. So since he didn't testify, I mean, the only reason I'm being hyper-technical about this is that there is a difference under the law for impeachment versus substantive use. And since he didn't testify, it couldn't have been impeaching him, which you acknowledge. But what she said was, and I have her remarks in front of me, she said, and while it may be reasonable for people to run from gunshots, A, it's not reasonable to bike back toward where the gunshots were, which is the undisputed testimony that he biked back toward the scene, and B, you don't run for two years, you don't run for two years, and even if you did run for some logical reason for two years, when you got busted, you tell what you know because you're a witness, you're a witness, you're a witness. The only reasonable implication that I can take from that is she's saying you would have told the police, not some random other party. And that's emphasized by the earlier remarks, and I'm sorry I don't have them printed out in front of me, where she said that the prosecutor was walking this fine line but made a good point that you would essentially speak to the police if you were a witness. Because that's what witnesses do. That's what she said. And therefore, you could not have been a witness, you must have been the murderer. Absolutely. Which shows why this was a critical component of her verdict. Because, I mean, I think it's important and noteworthy that that was the last thing that she said. Also, she said even if you did run for two years, you would have spoken if you were a witness to the police. And the reason that she said if you had a logical reason for running is he's from Puerto Rico. And if he didn't commit the murder, then he just saw his good friend getting shot in front of him. And remember that there was no motive presented for this murder. And so it's not completely inconceivable that you saw your friend getting shot and killed right in front of you and that you would decide to go home. Go ahead. The motive presented was that Mr. Atashe and Mr. Delgado had a dispute about drug money. Well, if anything, the motive that was presented, although I would say that it wasn't forcefully pursued or really even pursued at all in the prosecutor's clothing, closing because it was quite weak, was that Ms. Servany testified that she had agreed to have sex with Mr. Atashe in exchange for money and that he would that they were supposed to come back with drugs and that they didn't do so. But Helen Ramos, her friend, also testified that she did, in fact, have sex with him. And they're there. And regardless, if our cash had an issue with anyone, it would have been with Servany, not with. But they did have an argument, right? Mr. Delgado and Mr. Atashe. She believed that they were arguing. They were speaking loudly in front of her. They were speaking in Spanish. She didn't know what they were saying. But she did say that after Mr. Atashe went up to his apartment and came back down, that they were speaking calmly and didn't seem to be upset with one another. Let me ask a little bit about your your prejudice argument. And in your brief, you said the reason why. And of course, I'm heavily paraphrasing. But the reason why this prejudice is because there was some support for the defense's theory that the the real perpetrator fled in a car down 17th Street. But don't we have to credit the trial judge's determination that the car was a red herring? So I want to address that question as well as Judge Ambrose's question, where he went through the factors that the judge considered and talk through them. As to the judge believing that the car, the sound of the teals, the tire squealing was a red herring. First of all, it's hard to know how much of her interpretation of the evidence in that way was in light of the fact that she figured he must be guilty, given the fact that he didn't speak to the police. But even putting that aside, she never found Rosenberg, who was the woman who heard the cars, the tires squealing. She never didn't believe her or found her to be untrustworthy. She just said, yeah, you heard tires squealing, but maybe that had something to do with someone else, which presumably you would have to find if you were going to find him guilty. But what we have to do here is we have to imagine that trial counsel made the objection and then a reasonable jurist reconsidered the evidence, now excluding the consideration of the silence. And what the judge considered is she found Cervini credible, which we're not disputing that Cervini's account. She didn't find Rosenberg unbelievable. She just thought that her testimony was a red herring. As to the fact that the ballistics report is arguably consistent with the Commonwealth's case, my reading of the testimony, of Cervini's testimony, is that the two men turned the corner together, not that Mr. Artash was behind the victim, but that the Commonwealth, the trial ADA, speculated that it was possible that just after they turned the corner, Mr. Artash could have stopped while the victim continued walking and then he shot him, because actually the ballistics showed that the shooter was at least two and a half feet away from the victim when the person was shot. And it also must be noted that at this corner that they were turning around was an empty lot with a large tree on the corner. So it was entirely possible that someone could have been standing behind that tree, the two men turned the corner, and the person behind that tree shot him, because there could have been someone in a doorway just around the corner, or there could have been somebody sitting in a car. So it's not that the ballistics neither supports – it supports either account, basically, of guilt or innocence. The other evidence is the fact that Mr. Artash fled toward the scene. Essentially, Artash – or Servany was sitting on Mount Vernon Street, and the shooting happened on 17th. It's a cross street. And Mr. Artash came off of 17th, ran back around to where Servany was.  He picked up the bike. He rode down 17th Street. He didn't – sorry, he rode down Mount Vernon Street. He never turned on 17th Street. So I don't believe that's particularly strong evidence. But he had two choices, right? He came out of the Servany house or wherever the bike was, and he could have taken a left toward 17th Street where his friend was just shot, or taken a right. And we have no reason to believe that there was any danger to the right side. Is that correct? Well, it's hard to say given that all of these streets are one way. So the way that he went down 17th Street was the direction that the street goes. And whereas the next street over, which is where the street that they were walking toward, goes this way. So, I mean, presumably if there was somebody else that did the shooting and he saw them run off and hop in a car on that street, he might have thought they were circling around. I have no idea. All I'm saying is that does it support the Commonwealth's case? Yes. Is it overwhelming evidence of guilt? No. And I've already addressed going to Puerto Rico. And so all of this, the Commonwealth feels that given the import that the court seemed to place on his silence, and given that the evidence was weak, there was no eyewitness, there was no forensics that established who did it, and there was no video evidence or anything else, that had the judge not considered his silence, there would have been a reasonable probability of a different outcome. Thank you. Mr. Townsend. Thank you, Judge Porter. Ethan Townsend from McDermott Law and Emory. Court appointed amicus. Artache now for the first time presses that 13 years ago, one of two of his trial counsel should have objected to a few words that was spoken by the trial court when it was rendering its verdict, finding him guilty of first-degree murder. At the trial, there was an objection. Is that correct? There was an objection during the prosecutor's summation. Correct. There was an objection. And he told the counsel for the PICRA claim to include this. Is that correct? That is correct, Your Honor. He asked, and the letter from Mr. Artache is at 237 in the record. He asked to include it, and there's actually testimony from PICRA counsel that happened in the court below that he considered the issue and didn't find it meritorious, and instead pursued a separate issue. And as appellate counsel and PICRA counsel, picking issues is what they do all the time. And so to overcome his Martinez procedural default, Mr. Artache has to show that that PICRA counsel was deficient under Strickland. He can't do that here. That is a clear strategic choice that that counsel made in consultation with Mr. Artache not to pursue that claim. And so all of this is procedurally defaulted. But he was acting pro se in telling counsel what he wanted. Counsel may have disagreed. Counsel didn't put it in there. But what are we supposed to make of that? Well, you're supposed to make that counsel, in consultation with Mr. Artache, because he has a letter that went back to him, concluded in his judgment that was not the claim to bring, and said to bring the claim of knowing intelligent waiver of his jury trial right. That is the quintessential strategic decision that PICRA counsel made that can't be assailed under Strickland. Well, I mean, it gets deference, but it is not an absolute deal breaker for Mr. Artache's side. So we would then have to assess whether that was reasonable, given the circumstances, given the facts and the record. And we do here have at least one judge who thought that this was not only a tolerable claim of trial counsel ineffectiveness, but a winning claim. So what do you do with that? That's fair, Judge Freeman. It is not an unassailable argument. But I think what you do with that is you can certainly find that is, and that is a very commonly found reasonable determination. And people let go of what subsequently everybody views as a winning argument at the time, or winning argument later. But at the time, sitting there as PICRA counsel, they made a decision. Whether later on, retrospectively, that was the rad decision or not the right decision to make, that may be. But that's not the framework for Strickland. But in any event, what we have here, all of the procedural problems with Mr. Artache's case really just wash away and boil down to, I think, what you all have been talking about is prejudice. And that Mr. Artache cannot show prejudice here. The evidence for his guilt was overwhelming. And Judge Ambrose cataloged all of that evidence. And how do we know that the trial court didn't feel that silence was that important here, or that it was any kind of thumb on the scale? Well, here we have a decision from the trial court, post-trial, where she has time to sit down and write, what was the evidence sufficient to convict Mr. Artache? And what does she say? She actually only points to two main pieces of evidence, finding that sufficient to find him guilty. One, Mr. Venni's testimony, which she credited. And the credibility, I think, as Judge Friedman, you sort of hinted at, can't really be assailed at this point of the proceedings. And she credited Mr. Artache's flight, Puerto Rico. She didn't even talk about Mr. Artache's flight directly back toward where the danger was. And 17th Street is a one-way street which comes south. Mount Vernon is a one-way street which goes east. And so if there was a car, which, again, is credited not being a car, if there had been a car there, which, again, first of all, Mr. Venni probably would have heard or saw because she walked right by that, right down 17th Street coming from Ms. Ramos' house the second time. And the car would have been traveling either south on 17th the correct way, which Artache would have gone right through the crosshairs of it, or would have gone, I guess, I suppose, the wrong way on 17th North, at which point Mr. Carbonara, who was sitting on the step of Ms. Ramos' house on Wallace Street, would have seen it go through that intersection as well. So there was no car. What do we do with that 1925 opinion? I mean, we have her oral statement at the end of the, when she gave her verdict, and then we have the opinion afterwards. Does one get more weight than the other? Do we just consider them all together? Well, I think under the law you have to consider all of the evidence together, and you have to consider the evidence during the trial. I think what the opinion does is provide a demonstration of what was sufficient from that trier of facts point of view. And she only needed two pieces of evidence, not even all of the pieces of evidence that Judge Amber already cataloged. Didn't need the ballistics report. Didn't need the flight back towards the danger. Just needed flight to Puerto Rico for two years. Just needed Cervantes' testimony. So that's what she decided to focus on in her opinion after the conviction. But, you know, we have this unusual look into the fact finder's mind here, right? We don't just have a verdict. We have a whole narrative of how the fact finder reached the verdict. So what do you make of the fact that after discussing a number of pieces of evidence, she says, look, we're at the junction where Mr. Atashe is either the shooter or is the witness, right? And then she lists two factors. One, you don't run. And two, even if you do run, when you get busted, you talk. And so does the fact that that is at the end of her consideration when she had to make that decision between shooter or perpetrator, she focuses on the silence and the flight? What does that tell us? Well, if we were saying it's the timing of when she spoke about it, I think that it's a few words within her colloquy. And it's not entirely clear to me, and I don't think it was clear to trial counsel at the time, who clearly knew the law, that that was even an impermissible, if it was at all, reference to silence. I think that we make the argument in our briefing that the phrase busted is ambiguous in terms of what happened there, right? His father went and found him. That's bust, whether he spoke to his father or not. I think it's not unreasonable, sitting there as trial counsel, knowing that the court knows exactly what the law is, because that court had already just minutes before spoken about it and said, I'm not addressing silence. I don't think it's unreasonable for the trial counsel sitting there in the room at the time to have the thought that this is not an impermissible use of silence. Given the breadth of Pennsylvania law, though, how could references to either pre- or post-arrest silence not be impermissible? Well, under Pennsylvania law, at least as I understand it, pre-arrest silence is permissible to be used. The dichotomy right now is post-arrest silence under Pennsylvania law under Turner is clearly impermissible for any reason. I think certainly at the time it was unclear in this court under Waller whether or not post-arrest, pre-Miranda silence could be used as substantive evidence of guilt. I think Salinas would say that you can use that now, but of course that was to that effect. So post-arrest, pre- or post-Miranda, then, in Pennsylvania, would you agree that reliance on post-arrest, pre- or post-Miranda silence is a problem under Pennsylvania law? Yes. So your argument really turns on the vagueness of the word busted? Correct. And that him talking to his father could be considered a bust because his father's a police officer? No, I think the phrase busted, I think, could be viewed as you're busted because you're found, not that he's a police officer. Just that he had been in hiding for two years. His father testified he hadn't really even spoken to him much, hadn't seen him. Finally, he was found. You're busted. We find out where you are. I think I'm not saying that's the only reading. What I'm saying is sitting in habeas under Strickland, that is not an unreasonable view, particularly where the court is supposed to presume and know and follow the law. That's not an unreasonable view of what was said. But in any event, I don't think any of that matters. I think, one, this performance wasn't deficient, nor was there prejudice here. And I know I spoke about the prejudice point, but I'll speak about the deficiency point. As to PA law? Even as to Pennsylvania law, correct. Because? Well, I think there are three different strategic reasons why the counsel may not have objected there, even under Pennsylvania law. So first was, I think it was ambiguous as to whether or not this was even impermissible. And so it could have been a strategic basis, having heard silence not going to be considered. Strategically, why am I going to raise an objection that I don't think is actually meritorious? And two. If you have a case as clear as the Spots case under PA law, why would you not at least raise it? Well, so I think it's also not unreasonable that the evidence that came in, what was actually objectionable, was first objected to as the use of silence by the prosecutor during summation. The court then says, I'm not relying upon that. From an appellate perspective, I don't think anything else was needed to preserve the silence issue. What you have then is you have a trial judge who, I think Judge Portey said, seems to be sort of talking out of both sides of their mouth. And what would have happened if an objection was lodged? What would have happened, I think we all know, is that the court would have corrected it, and then the appellate record is way worse for you on appeal. The court would have said, I already said I'm not paying attention to that. Correct. I already said I'm not using it, I'm not paying attention to it. And so your record on appeal now is way worse on that issue. And so I think that's a strategic reason. The last strategic reason. Was trial counsel also direct appeal counsel here? He was not. He was not? As far as I understand it, they were not. But under this theory, he would be not objecting to the judge's reference to silence so as to preserve a better issue for direct appeal, but then not telling direct appeal counsel, here's a great issue for you to raise. Well, I mean, Your Honor, there's nothing in the record about what trial counsel did or didn't do or spoke with direct appeal counsel. For all we know, unfortunately, trial counsel, as I understand it, didn't testify in the court below at the evidentiary hearing. Only picker counsel did. Again, the record is void as to whether or not this was an issue that direct appeal counsel looked at, considered, and decided not to pursue, because appellate counsel pick and choose issues all the time, and that could certainly be the case. But I think there's a third reason why this is completely unreasonable. And, right, we have to think about the standard here. The standard is, was this counsel's performance so deficient as to render the counsel effectively nonexistent? That's the standard. And the other issue is, we know that from the first words out of the trial court's mouth, Cervante was a good witness. Trial counsel knew exactly where this case was going. And they clearly already spoke with Mr. Atasche about sentencing and that if you were found guilty, you're going to be sentenced immediately by this same judge, because that's exactly what happened. The trial court said, do you want to be sentenced now? And Mr. Atasche's counsel said, yes. So from a trial counsel's perspective, if I know my client's going to be found guilty, am I going to raise an objection that the court has already dealt with, potentially annoy that judge that's about to now sentence me? I think that's not an unreasonable strategic choice. But it was a mandatory life sentence. So what could annoying the judge, how could that harm the client? I don't disagree. That is, it was a mandatory life sentence without parole. But, again, these are strategic choices that we have to think about sitting there at the time. Two trial counsel, neither of them said anything. I don't think that's a completely unreasonable view. What she's saying, this is a home run or a strikeout. So offending the judge is not going to – I mean – Fair point, Judge Ambrose, but that's just one of three different possible reasonable explanations. But then ultimately you come back down to prejudice, that this one piece of evidence. Prejudice is clearly an issue here. But you've got a case where he's arguing, Mr. Attache, that he had told his counsel to make a particular argument with respect to ineffective assistance of counsel. Counsel doesn't do it. The prosecutor now states that that was an error, as does Mr. Attache. And the real question then becomes, is it prejudice? It becomes, to me, fairly simple in terms of the analysis of how you proceed. But it's tough for me to say, in this case, with such a clear Pennsylvania decision on point, that there wasn't some deficiency of counsel, at least not bringing up the issue that Spence deals with. And I can wholly understand that viewpoint, that this could have been deficient. What I am saying, though, however, is that none of that matters because you still have to find prejudice. I get that. I get that. I'm just saying you seem to be arguing that it wasn't really necessarily deficient. Well, I certainly think that it is arguably not deficient. And as — I'm having trouble following that. Understood, Your Honor. I'm saying that it is arguably not deficient. And certainly, I feel like in my role as amicus, I had to present all of the potential arguments here. I think the winner, with respect to affirming the judgment below, is clearly prejudice here. Thank you. Thank you. Mr. Argue? I'm just going to have one point, Your Honor. Yes. I'm going to address your first question again because it was talked about it in terms of the judge making a statement that she will not consider silence, but then, in fact, talks about it. I think it's impossible to assume or to conclude without any offense to anybody that what she said explicitly four or five lines later was somehow a mischaracterization or a mistake on her part. She was explicitly talking about him not talking to people when he got arrested. The word busted, and in this context, was an arrest. He was not going to talk to anyone who found him in Puerto Rico. She was referring to when he got arrested, he had a chance to tell the police that he was a witness. That's what she was speaking about. And she penalized him for not doing that, so she used it against him as substantive evidence. That is almost like the equivalent of a coerced confession. He did not testify. I mean, he did not volunteer any statements, but she construed a negative statement from that silence and used it against him. That's what this case is about. Do you disagree that if trial counsel had objected at that moment, the judge would have said, I already said I'm not, you know, something like, I already said I'm not considering that and pulled it back?  I will not challenge that. So how do you get the reasonable probability of a different outcome if counsel had objected? Well, we could hope that the judge would realize the mistake and hopefully would change her decision. And talking about a reasonable fact finder, not specifically this trial judge. This reasonable fact finder was told that under the circumstances that you just explain on the record that there's two options. Either he's a witness or he's the shooter. And someone is objecting to you that your conclusion, the fact that make you believe that you are the shooter, because that's what he says. You are not the witness. You are the shooter because you did not talk. She makes it explicit. How do you suggest we should consider the written opinion? I don't think the written opinion should take precedence over her statements when she explained that ruling there. What counsel said was that you consider it as a whole. I don't think it should not be considered, period. But I don't think it should be given precedence. And I don't think that the judge may want to write that she considered a defendant's silence, which is clear in violation of the Pennsylvania Constitution, in her opinion, in the opinion of the court. That's my view on why that factor was not mentioned. Okay. Thank you very much. Thank you. Ms. Ernst. I just have two quick points in answering your questions, Judge Porter. As to what we should consider regarding the 1925 opinion, in that appeal it was sufficiency of the evidence that was raised, and the sufficiency standard is not the same standard as the reasonable probability standard, and we are not asserting that there was not sufficient evidence. And so I don't believe that that opinion's recitation of the facts really carries any sway whatsoever. And as to wouldn't the judge have just said, fine, I'm not considering that, and then simply found him guilty anyway, under Saranchak, which I'm sorry, I don't have the site in front of me, I can go grab it, you don't consider what this judge would have done. You consider what a reasonable judge would have done, and a reasonable, fair-minded jurist would have realized the error under the Pennsylvania Constitution and would have reconsidered all of the evidence, putting aside his silence. And we believe that had the judge done so, there's a reasonable probability of a different outcome. Thank you. Thank you for your excellent briefs and argument, and Mr. Townsend, for fulfilling your obligation. And we're finished.